UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
MARCEL LIONEL SEJOUR,

                        Petitioner,

    -against-

IMMIGRATION AND NATURALIZATION
SERVICE,

                        Respondent.
----------------------------------------------------------x

**MEMORANUDM & ORDER**

11 CV 3725 (RJD)

DEARIE, District Judge.

      Invoking this Court's mandamus jurisdiction under 28 U.S.C. § 1361, petitioner Marcel Lionel Sejour seeks a *nunc pro tunc* order compelling respondent to declare him a naturalized United States citizen as of August 13, 2001, or alternatively, to reopen his 2001 naturalization application. Assuming without deciding that mandamus jurisdiction lies for the kind of relief Sejour seeks, see, e.g., Escaler v. USCIS, 582 F.3d 288, 291, 293 (2d Cir. 2009) (on application for order compelling USCIS to issue certificate of naturalization or reopen 1993 naturalization application, Second Circuit recognizes availability of section 1361 mandamus jurisdiction; matter rendered moot when USCIS reopened the naturalization proceeding), I find that Sejour has not made the formidable showing required for the relief he seeks.

      "[M]andamus is an extraordinary remedy, intended to aid only those parties to whom an official or agency owes 'a clear nondiscretionary duty.'" Escaler, 582 F.3d at 292 (quoting Heckler v. Ringer, 466 U.S. 602, 616 (1984). The party who seeks mandamus must show "'a clear and indisputable' right" to its issuance. Miller v. French, 530 U.S. 327, 329 (2000) (quoting Mallard v. U.S. Dist. Ct. for the So. Dist. Iowa, 490 U.S. 296, 309 (1989)).

Sejour has failed to show that he has a "clear and indisputable" right to a declaration of United States citizenship or the reopening of his 2001 naturalization proceeding. In claiming that he acquired citizenship when he "took" the oath of allegiance, Sejour relies solely on the fact that he *signed* a document containing the oath during his initial naturalization interview on August 13, 2001. That act does not confer citizenship. See Abiodun v. Gonzales, 461 F.3d 1210, 1211 (10th Cir. 2006) ("We . . . hold[ ] that signing an oath of allegiance during a naturalization examination is insufficient to confer citizenship"); Yakubu v. U.S. Attorney General, 456 Fed. App'x 868, 870 (11th Cir. 2012) ("The fact that an applicant for U.S. citizenship has signed the oath of allegiance during the application process does not confer status as a U.S. national") (collecting earlier Eleventh Circuit authorities), cert. denied, __ U.S.__, 133 S. Ct. 355 (2012); Okafor v. Gonzales, 456 F.3d 531, 534 (5th Cir. 2006) (although Okafor "signed a document containing the oath of renunciation and allegiance required of all applicants for naturalization" either "[d]uring or after his interview," and "the INS officer [later] recommended the approval of Okafor's naturalization application," Okafor was not a citizen because he "never participated in a public oath ceremony and never received a certificate of naturalization"); Perdomo-Padilla v. Ashcroft, 333 F.3d 964, 966, 969 (9th Cir. 2003) (rejecting removable alien's claim that he had become a United States national when "he completed an application for naturalization that contained a statement of allegiance to the United States," reasoning that, otherwise, "rejected naturalization applicants who do not renounce their statements of allegiance . . . would not be aliens and . . . removable"). Second Circuit dictum is in accord. See Escaler, 582 F.3d at 292-93 ("Courts have held the public oath requirement to be a statutory necessity . . . and to date no court has held that signing the Declaration of Intention fulfills that requirement").[1]

---

[1] The form containing the oath (and that Sejour signed) is Form N-649, titled "Certificate

2

Sejour also advances an alternative theory of citizenship. Immigration eventually denied Sejour's naturalization application by letter dated June 7, 2007—almost six years after his initial interview. Under 8 C.F.R. § 336.1, when the Service decides to deny naturalization, it is required to "serve a written notice of denial no later than 120 days after the date of the applicant's first examination on the application interview." Sejour argues not only that the June 2007 letter is invalid but also that he became a citizen by operation of law at the expiration of the 120-day period. There is no authority for Sejour's novel proposition, much less a basis for concluding that these facts give rise to a "clear and indisputable right" to a declaration of naturalization or to a reopening of the naturalization application. To the contrary, naturalization law contemplates the possibility of post-interview delay and provides a remedy—which is not citizenship by operation of law but, rather, the opportunity, upon the expiration of the 120-day period, to ask a federal district court to intervene. See generally 8 U.S.C. §1447(b). Sejour did not seek such relief; indeed, by his own assertion he did formally not inquire into his naturalization status until January 2008, when he filed a form N-565, "Application for Replacement Naturalization/Citizenship Document."

Although Sejour also quarrels with the grounds upon which his naturalization was denied (the Service cites past criminal conduct that Sejour claims was disclosed and declared

---

Preparation Sheet and Oath Declaration," which is distinct from Form N-400, the basic naturalization application on which the oath can also sometimes be found. Section 75.1 of the USCIS Adjudicator's Field Manual (accessible at http://www.uscis.gov) offers enlightenment. First, the manual reiterates that "taking the oath usually requires the applicant to orally recite the oath . . . and is not accomplished by merely signing the copy of the oath." The manual further explains: "The [c]urrent N-400 contains the Oath of Allegiance. During the examination, the applicant will be required to sign two places on the current N-400. Applicants must sign to acknowledge willingness and ability to take the oath and to acknowledge that the contents, testimony, and evidence provided are true and correct. During the transition from the old edition of the N-400 (dated 1991) there will be some applicants who, because they applied on the old form, must still sign Form N-649: Certificate Preparation Sheet and Oath Declaration. As long as there are old N-400's, the N-649 must be used."

3

inconsequential at the time of his interview), he has not shown a compelling basis for reopening the naturalization inquiry. Indeed, according to the allocution Sejour made in this Court when pleading guilty to narcotics and money laundering charges in 2005, he was knowingly and actively engaged in *additional* criminal conduct, at or about the very time of his naturalization interview, that he did not disclose in his application and that would certainly have resulted in its denial. Compare Transcript of Criminal Cause for Pleading in *United States v. Sejour, 02-CR-1213*, Mar. 9, 2005 (ECF 276) at p.26 (between December 2000 and September 2002 Sejour was involved in the distribution of cocaine) with Sejour's Application for Naturalization, dated August 13, 2001 (ECF 1 at p. 14) (Question 15: "Have you ever (a) knowingly committed any crime for which you have not been arrested?" Answer: "No.").[2]

The petition for a writ of mandamus is denied.

SO ORDERED.

Dated: Brooklyn, New York
November 30, 2012

/s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge

---

[2] Sejour contends that the Service did not actually mail the June 2007 letter denying his naturalization application until 2008, and further, that it sent the letter to his non-custodial address even though it should have known that Sejour was then in federal custody on his narcotics and money laundering conviction. Sejour avers that he first received the letter when it appeared as an exhibit in respondent's answering papers on this petition; as a result, Sejour claims, he lost his opportunity to appeal the denial through the ordinary statutory means. See 8 U.S.C. § 1421(c) (an individual whose application for naturalization has been denied may seek de novo judicial review, but only if he has first exhausted his administrative remedies by requesting a hearing before an immigration officer as provided in 8 U.S.C. § 1447(a)). Respondent does not address these assertions. Were it necessary for me to reach them, and assuming there were a basis under the circumstances for construing the mandamus petition as a section 1421(c) proceeding, Sejour could not possibly prevail for the reasons just expressed.